**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GERVASE PETERSON, RICHARD BERGER and SKYE DENNIS,** : : : | |
| Plaintiffs, : : | **JURY TRIAL DEMANDED** |
| v. : : | |
| **KEN GOLDIN, GOLDIN AUCTIONS, LLC, SPOKE STUDIOS, LLC, WHEELHOUSE ENTERTAINMENT, LLC, NETFLIX, INC. and DOES, 1-5** : : : : : | Civil Action No. |
| Defendants. : | |

**COMPLAINT**

Plaintiffs, Gervase Peterson (hereafter "Peterson"), Richard Berger (hereafter "Berger") and Skye Dennis (hereafter "Dennis"), by and through their attorneys, Samuel B. Fineman, Esq. and Lynn M. Cohen, Esq., of Cohen Fineman, LLC, for their Complaint against Defendants, Ken Goldin (hereafter "Goldin"), Goldin Auctions, LLC (hereafter "Goldin Auctions"), Spoke Studios, LLC (hereafter "Spoke"), Wheelhouse Entertainment, LLC (hereafter "Wheelhouse"), Netflix, Inc. (hereafter "Netflix") and Does 1-5 (hereafter collectively referred to as "Defendants"), allege as follows:

**INTRODUCTION**

1. This is a civil action seeking actual and statutory damages for copyright infringement arising under the copyright laws of the United States, 17 U.S.C. §101 et seq., as amended (the "Copyright Act").

2. Plaintiffs, Peterson, Berger and Dennis, are the owners of work copyrighted pursuant to the Copyright Act under Registration No. Pau 3-983-383. The work pertains to Peterson and Berger's original script/screenplay entitled *The Goldin Boys*.

3.     Defendants directed, produced, advertised, sold, and streamed *King of Collectibles: The Goldin Touch* (hereafter "*King*") television series that premiered in May of 2023 on Defendant Netflix' streaming service. *King* is an arrant copy of Plaintiffs' proposed television series *The Goldin Boys*.

4.     Without Plaintiffs' permission, license, authority or consent, Defendants knowingly and illegally used Plaintiffs' work to create the *King* television series.

5.     Defendants' *King* television series and the content protected by Plaintiffs' registered copyright are strikingly and substantially similar.

6.     Defendants neither sought nor received permission from Plaintiffs to use *The Goldin Boys* as the basis for *King*.

7.     Moreover, on information and belief, Defendants have made substantial profits from their knowing infringement of Plaintiff's' copyrighted work.

8.     As a result of Defendants' infringement of Plaintiffs' copyrighted work, Plaintiffs seek damages, including, *inter alia*, an accounting of profits by Defendants, damages and lost profits of Plaintiffs, costs, and attorneys' fees; or, at Plaintiffs' election, statutory damages. Plaintiffs also seek equitable relief, including preliminary and permanent injunctive relief, and impoundment and destruction of the infringing articles, to prevent further violations of Plaintiffs' rights under the Copyright Act of 1976, as amended, 11 U.S.C § 101 et seq. Furthermore, because Defendants willfully and deliberately infringed upon Plaintiffs' copyrighted work, Plaintiffs seek an award of attorneys' fees and costs pursuant to 17 U.S.C. § 505 along with credit for creating and writing the original source material.

## PARTIES AND JURISDICTION

9. Plaintiff Peterson is a resident of Southern New Jersey.

10. Plaintiff Dennis is a resident of Southern California.

11. Plaintiff Berger is a resident of Eastern Pennsylvania.

12. On information and belief, Defendant Goldin is a resident of Southern New Jersey.

13. On information and belief, Defendant Goldin Auctions is a Nevada limited liability company headquartered at 160 E. Ninth Ave, Suite C, Runnemede, New Jersey 08078.

14. On information and belief, Defendant Spoke is a Delaware limited liability company whose principal address is 4 Star Point, Suite 201, Stamford, Connecticut 06902.

15. On information and belief, Defendant Wheelhouse is a Delaware limited liability company whose principal address is 4 Star Point, Suite 201, Stamford, Connecticut 06902.

16. On information and belief, Defendant Netflix is a Delaware corporation whose registered agent is CT Corporation, 1209 Orange Street, Wilmington, Delaware 19801.

## JURJSDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and 1338(a).

18. This Court has personal jurisdiction over each of the Defendants because Defendants have conducted business in the State of New Jersey and purposefully availed themselves of the benefits and laws of the State of New Jersey.

19. Upon information and belief, examples of Defendants conducting business in the State of New Jersey and purposefully availing themselves of the benefits and laws of the State of New Jersey include producing, marketing, promoting, selling, and streaming the *King* television series throughout the State of New Jersey.

20.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(a).

**FACTS**

21.     *The Goldin Boys* sprang from the minds of Peterson and Berger, and on June 17, 2019, they registered a treatment (script/screenplay) for same with the U.S. Copyright Office under Registration No. Pau 3-983-383. The Registration Decision date is noted as August 26, 2019. A true and correct copy of the treatment is attached hereto, made a part hereof and marked and Exhibit "A."

22.     In 2019, Peterson, a television personality (of CBS's *Survivor* franchise fame) and social media influencer, met Defendant Goldin, a leader in sports memorabilia and auction sales, through Berger, who was then working for Defendant Goldin Auctions.

23.     The synopsis of *The Goldin Boys*' treatment reads as follows: "*The Goldin Boys* takes you inside the amazing and sports memorabilia world or Goldin Auctions based in Runnemede, NJ. Watch as Ken and his team acquire and sell sports items dealing with some of the most rare and valuable items in the industry. They're the experts at bringing the highest percentage of 'fresh' items that have never been offered to public sale. With some of the highest sale prices and the biggest names past and present in sports along with unforgettable characters The Goldin Boys is a mesmerizing and fascinating television show that will have you addicted and checking your basement and attics for your old collection." See Exhibit "A."

24.     The copyrighted treatment goes on list Frank DiNote (hereafter "DiNote"), Steve Lucas (hereafter "Lucas") and former Goldin Auctions' consignment director, Plaintiff Berger, as cast members slated to star in the program.

25.     As early as June 24, 2019, with DiNote's knowledge and consent, Peterson was "shopping" *The Goldin Boys'* treatment to producers, including Scott Messick.

26. Enhancing the treatment with clips of Goldin discussing sports memorabilia, Peterson then brough in Dennis as a producer and partner to create a "sizzle reel" for this "compelling" and "interesting" show, "which hasn't been done yet." A true and correct copy of another description of the treatment is attached hereto, made a part hereof and marked as Exhibit "B."

27. In this enhanced iteration of the treatment for the series, Jackie Robinson's historical contracts were featured and Dave Amerman (hereafter "Amerman"), who is featured heavily in *King*, is listed as a prominent cast member for *The Goldin Boys*. See Exhibit "B."

28. By November 12, 2019, the "sizzle reel" under Dennis' stewardship was starting to take shape.

29. DiNote and Dennis reviewed a "budget proposal" for the "sizzle reel" shoot, which was to take place in Florida and featured Defendant Goldin, *The Goldin Boys*' cast and NBA legend Rip Hamilton, who volunteered to take part in the project.

30. The budget for the "sizzle reel" was broken down into pre-production, production and post-production, and Defendant Goldin Auctions had agreed to pay for pre-production and production while Dennis paid all post-production costs. A true and correct copy of the proposed budget is attached hereto, made a part hereof and marked as Exhibit "C."

31. Amerman was on board for the project and had previously provided headshots, a biography and his IMDB profile.

32. On November 14, 2019, DiNote emailed Dennis: "I just emailed Ken [you] again. Let him [you] know it's now or never," ostensibly referring to making the "sizzle reel." True and correct copies of text messages and social media posts between DiNote and Plaintiffs are attached hereto, made a part hereof and marked as Exhibit "D."

33. Peterson and Dennis thereafter had an in-person meeting with Goldin, exploring the particulars of what *The Goldin Boys*' "sizzle reel" would look like, including the stars, production, pacing and look and feel of the show.

34. The next day, November 15, 2019, Dennis emailed the following to DiNote: "Exciting times!! I'm looking forward to getting started and a deal to follow hopefully not too long afterwards!" See Exhibit "D."

35. On November 20, 2019, Dennis emailed DiNote and Amerman, noting that he was "putting together a rough script for and outline together for pre-production. So as soon as you guys provide me your thoughts I will incorporate and send right back for review." See Exhibit "D."

36. On November 29, 2019, Dennis sent the following email to DiNote and Amerman:

> Good Morning Gents,
>
> Attached please find Ken's monologue and rough shooting script for production. As we know this is a "reality show", so I tried to put a framework together for a teaser/sizzle that will show as to what the series will be about. Please change any dialogue or wording to make it natural for you guys. Also give any additional feedback and/or notes of what you may want added or removed, but we have to keep as concise as possible since its [sic] only a teaser.
>
> Also please keep in mind 8-roll will be cut throughout this teaser as well to show all the elements of the company.
>
> Have Ken tailor his monologue to what he wants to say. It will be voice over fro [sic] 30 second spot, so he doesn't have to completely memorize it. He can read from paper.
>
> Please bring at least three changes of clothing for options because Monday's shoot will represent two days within the script.
>
> Think of any confessional questions you may want to ask. I will probably only provide two myself that are relevant to this teaser.
>
> I will probably be emailing you again before end of weekend with additional notes.

>Thanks guys. Call or email me as well if needed.

See Exhibit "D."

37. The "sizzle reel" was shot on location with Defendant Goldin and staff at Defendant Goldin Auctions in Runnemede in early December of 2019.

38. A few days later in Miami and Ft. Lauderdale, shooting continued in order to capture a segment with Rip Hamilton and to follow a storyline with Amerman. See Exhibit "D."

39. Post-production photographs of the Florida shoot, which were subsequently posted on Instagram December 9, 2019, featured Rip Hamilton posing with Amerman, Peterson, Dennis and production staff. See Exhibit "D."

40. All of the post-production Instagram posts included the hashtag: "GoldinBoys." See Exhibit "D."

41. In a pre-production photograph on Instagram for the Runnemede segment of the shoot, Defendant Goldin posed with Dennis and production staff with the hashtag: "A dope pre-production meeting in New Jersey for new tv show 'Goldin Boys.'" See Exhibit "D."

42. Amerman is also featured heavily in Instagram posts for production in both the Runnemede and Florida shoots. See Exhibit "D."

43. When the "sizzle reel" was completed, Dennis uploaded it to the Vimeo site with the address: https://vimeo.com/382628920, as a launching point to direct interested parties and possible buyers. A true and correct copy of the URL of the "sizzle reel" is attached hereto, made a part hereof and marked as Exhibit "E."

44. Peterson and Dennis' efforts were encouraged by DiNote, who, on June 12, 2020, inquired via text message about the "*Goldin Boys* teaser" and Peterson thereafter replied with a link to the site, which is entitled "*Goldin Boys* (Reality Show Sizzle) Full. See Exhibit "D."

45. After finishing production of the "sizzle reel," Peterson and Dennis were very excited about the prospect of pitching "*The Goldin Boys*" to various media outlets.

46. On February 25, 2020, DiNote texted Dennis that he had a conference call with Rick Harrison (producer of Pawn Stars), ostensibly about "*The Goldin Boys*." See Exhibit "D."

47. On April 15, 2020, DiNote emailed Dennis and Berger and noted that Tracey, Rick Harrison's ex-wife, had seen *The Goldin Boys*' Vimeo reel and "was impressed with how it was shot." A true and correct copy of said correspondence is attached hereto, made a part hereof and marked as Exhibit "F."

48. Following the summer of 2020, radio silence ensued from Defendants Goldin and Goldin Auctions with respect to plans for the production of *The Goldin Boys* in any media format.

49. Through a media blitz, reports touting the premiere of the next "Pawn Stars," Netflix's *King of Collectibles: The Goldin Touch*, had begun in May of 2023.

50. The substantial similarities between *The Goldin Boys* and *King* are remarkable.

51. First, *King* features in its premiere a segment about Jackie Robinson's collectibles, which happens to coincide with the same promotional material featured in *The Goldin Boys*.

52. Second, King shares an incredible similarity to the look, feel and pacing of *The Goldin Boys*' "sizzle reel."

53. Third, both shows feature Defendant Goldin and Amerman as the putative stars, with Amerman having the same storyline as affable second-in-command foil who is either hardly working or working hard.

54. Next, both programs feature interview segments of sports celebrities interwoven in the scripts.

55. Although *The Goldin Boys* is incapsulated in one "sizzle reel," it is clear from a comparison of *The Goldin Boys* and the entire *King* series that 1) the major stars of *King*, Defendant Goldin and Amerman, appear prominently in both; 2) Amerman's role of foil and his storyline are featured in both productions; 3) both productions highlight segments featuring celebrity athletes discussing their stories about collectibles; 4) Jackie Robinson's valuable memorabilia is featured in the original *Golden Boys*' pitch and plays a prominent role in the first episodes of *King* and 5) *King* shares the same pacing, look, feel and editing of *The Goldin Boys*.

**COUNT I**
(Defendants' infringement of Copyright Registration No. Pau 3-983-383)

56. Plaintiffs repeat and re-allege the assertions contained in the paragraphs above.

57. Plaintiffs owns all rights, title, and interest in and to Plaintiffs' U.S. Copyright Registration No. Pau 3-983-383 ("Pau 3-983-383").

58. Defendants, without permission, license, authorization, or consent from Plaintiffs, have copied, sold, distributed, advertised and streamed and are currently copying, selling, distributing, advertising, and streaming *King*, which is strikingly and substantially similar to, and based upon, Pau 3-983-383.

59. With knowledge of Plaintiffs' Copyright Work Pau 3-983-383, Defendants have rendered substantial assistance to each other's acts of infringement as described above and are each thus jointly and severally liable for the infringement of Pau 3-983-383.

60 Defendants have thereby knowingly infringed Pau 3-983-383.

61. Defendants' infringing acts were committed with knowledge or in reckless disregard of Plaintiffs' rights in Pau 3-983-383 under the Copyright Act.

62.     The aforementioned acts by Defendants have damaged and, if not enjoined, will continue to damage Plaintiffs, and cause irreparable harm for which Plaintiffs have no adequate remedy at law.

63.     Plaintiffs are thus entitled to preliminary and permanent injunctive relief pursuant to 11 U.S.C. § 502 prohibiting Defendants from infringing Plaintiffs' copyrights, including but not limited to an injunction prohibiting Defendants from (a) imitating, copying, or making any unauthorized use of Pau 3-983-383 in any manner, and from publishing, distribution, selling, marketing, building, or otherwise disposing of any copies of Pau 3-983-383, and for making any derivative works of Pau 3-983-383 in the form of a second series or otherwise; (b) manufacturing, producing, distributing, circulating, selling offering for sale, advertising, promoting, or displaying any copy or colorable imitation of Plaintiffs' registered copyright Pau 3-983-383; and (c) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' copyright Pau 3-983-383, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, distribution, circulation or distribution of any product or service.

64.     Defendants' intentional and unlawful copying of Pau 3-983-383 has allowed them to receive profits and gains to which they are not entitled.

65.     Upon information and belief, Defendants have made substantial profits and gains from *King* that they are not entitled to retain.

66.     Plaintiffs are entitled to recover from Defendants all damages Plaintiffs have and may later sustain due to Defendants' improper conduct copying of Pau 3-983-383, or statutory fees at Plaintiffs election, in an amount to be proven at trial, pursuant to 17 U.S.C. § 505.

67. The actions of Defendants have been willful and deliberate and justify an award of attorneys' fees and costs to Plaintiffs pursuant to 17 U.S.C. § 505.

68. Plaintiffs are also seeking public acknowledgement of their original treatment idea and writing and creator credit for their work.

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a. Enter judgement that Defendants have infringed upon Plaintiffs' Copyrighted Work;

b. Direct Defendants to pay Plaintiffs such damages as the jury determines Plaintiffs have sustained in consequence of Defendants infringing Plaintiffs' copyrights, and to account for all gains, profits, and advantages derived by Defendants by their infringements of Plaintiffs' copyrights under 17 U.S.C. § 504(b), or at Plaintiffs' election, statutory damages under 17 U.S.C. § 504(c);

c. Preliminary and permanently enjoin Defendants, their officers, directors, agents, partners, employees and related companies, and all persons acting for, with, by, through, or under them, from copying streaming, reproducing, distributing, advertising, promoting, offering for sale, or selling *King* or any other work substantially similar to the Copyrighted Work, including production, publication, distribution, sale, and/or marketing of a second *King* series;

d. Order Defendants to deliver up to be impounded during the pendency of this lawsuit under 17 U.S.C. § 503 all copies of the Copyrighted Works in Defendants' possession or under Defendants' control and to deliver up for destruction all infringing copies, including but not limited to the immediate ceasing of any streaming of *King* on any streaming platform.

e. Direct Defendants to pay Plaintiffs costs of this lawsuit and her reasonable attorneys' fees allowable to her by the Court under 17 U.S.C. § 505;

f. Award Plaintiffs such other and further relief as the Court may consider appropriate; and

g.        Plaintiffs request a jury trial as to all matters other than the equitable remedies sought herein.

Respectfully submitted this 25th day of May, 2023.

COHEN FINEMAN, LLC
*/s/Samuel B. Fineman*
Samuel B. Fineman, Esq.
NJ ID. No. 005381999
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
Marlton, NJ 08053
(856) 304-0699 – tel.
(856) 489-5088 – fax
sfineman@cohenfineman.com

COHEN FINEMAN, LLC
*/s/Lynn M. Cohen*
Lynn M. Cohen
NJ ID. No. 029291992
1999 Marlton Pike E., Suite 4
Cherry Hill, NJ 08003
Marlton, NJ 08053
(856) 304-0699 – tel.
(856) 489-5088 – fax
lcohen@cohenfineman.com

Counsel for Plaintiffs