# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERVASE PETERSON,<br><br>                              Plaintiff,<br><br>        v.<br><br>KEN GOLDIN, GOLDIN AUCTIONS, LLC, SPOKE STUDIOS, LLC, WHEELHOUSE ENTERTAINMENT, LLC, NETFLIX, INC., and DOES 1-5,<br><br>                              Defendants. | Case No. 1:23-cv-02866-CPO-AMD<br><br>Hon. Christine P. O'Hearn<br>Hon. Ann Marie Donio<br><br>*Document Electronically Filed*<br><br>**Motion Date: November 6, 2023**<br><br>**Oral Argument Requested** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................... 1

BACKGROUND ................................................................................... 4

STANDARD OF REVIEW ..................................................................... 7

ARGUMENT ......................................................................................... 8

    I.     THE COPYRIGHT CLAIM FAILS AS A MATTER OF LAW. ..... 8

          A.     Plaintiff has still failed to identify any protectable element of *The Goldin Boys* that was allegedly copied. ............................ 8

          B.     Plaintiff's allegations improperly lump all "Defendants" together ................................................................................ 17

    II.    PLAINTIFF'S CLAIM UNDER THE NEW JERSEY UNIFORM PARTNERSHIP ACT ALSO FAILS AS A MATTER OF LAW. . 20

          A.     Plaintiff cannot plausibly allege the existence of a partnership under New Jersey law. .......................................................... 21

          B.     In any event, the Copyright Act preempts the New Jersey partnership claim .................................................................. 27

CONCLUSION ..................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*78th Infantry Div., World War II Living History Ass'n v. Oprendek*,
  2011 U.S. Dist. LEXIS 140014 (D.N.J. Aug. 4, 2011) ......................................28

*Aequus Techs., LLC v. GH, LLC*,
  2009 U.S. Dist. LEXIS 72933 (D.N.J. Aug. 17, 2009) ...............................24, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................3, 8, 16, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).........................................................................................8

*Bethea v. Burnett*,
  2005 U.S. Dist. LEXIS 46944 (C.D. Cal. June 28, 2005)...........................10, 12

*Bond v. Solvay Specialty Polymers, USA, LLC*,
  2023 U.S. Dist. LEXIS 32426 (D.N.J. Feb. 27, 2023) ......................................17

*Castorina v. Spike Cable Networks, Inc.*,
  784 F. Supp. 2d 107 (E.D.N.Y. 2011) ..........................................................9, 10

*E. Coast Spine Joint v. Aetna Life Ins. Co.*,
  2023 U.S. Dist. LEXIS 129231 (D.N.J. July 25, 2023) ....................................29

*Eagan v. Gory*,
  374 F. App'x 335 (3d Cir. 2010) ...............................................................*passim*

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)..........................................................................................8

*Envoy Techs., Inc. v. Northrop Grumman Co.*,
  2020 U.S. Dist. LEXIS 75923 (D.N.J. Apr. 30, 2020)......................................28

*Fenwick v. Unemployment Comp. Comm'n*,
  44 A.2d 172 (N.J. 1945) ............................................................................*passim*

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ...............................................................................3

*Goodman v. Harry Fox Agency*,
2003 U.S. Dist. LEXIS 27269 (D.N.J. Dec. 30, 2003) ..................................2, 19

*Gray-El v. Jennifer Lopez/Nuyorican Prods.*,
2019 U.S. Dist. LEXIS 230908 (E.D. Mich. Dec. 18, 2019) .................9, 11, 13

*Gregory S. Markantone DPM, P.C. v. Podiatric Billing Specialists, LLC*,
599 F. App'x 459 (3d Cir. 2015) ........................................................................16

*Hayes v. Minaj*,
2012 U.S. Dist. LEXIS 197043 (C.D. Cal. Dec. 18, 2012) ................................14

*Jackson v. Booker*,
465 F. App'x 163 (3d Cir. 2012) .......................................................................15

*Levey v. Brownstone Inv. Grp., LLC*,
2013 U.S. Dist. LEXIS 90178 (D.N.J. June 26, 2013) ................................18, 20

*Maldonado v. City of Passaic Bd. of Educ.*,
2020 U.S. Dist. LEXIS 9586 (D.N.J. Jan. 21, 2020) .........................................29

*Marchisotto v. Malik*,
2022 U.S. Dist. LEXIS 114921 (D.N.J. June 29, 2022) .....................................17

*Marino v. Usher*,
673 F. App'x 125 (3d Cir. 2016) .......................................................................27

*Messler v. Cotz*,
2017 U.S. Dist. LEXIS 61817 (D.N.J. Apr. 24, 2017) ....................21, 22, 24, 27

*Milano v. NBC Universal, Inc.*,
584 F. Supp. 2d 1288 (C.D. Cal. 2008) ..........................................................9, 13

*Pino v. Viacom, Inc.*,
2008 U.S. Dist. LEXIS 24453 (D.N.J. Mar. 4, 2008) ...............................*passim*

*Plusgrade L.P. v. Endava Inc.*,
2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. Mar. 8, 2023) ...................................19

*Rodriguez v. Heidi Klum Co.*,
2008 U.S. Dist. LEXIS 80805 (S.D.N.Y. Sept. 30, 2008) .................................13

*Sawicky v. AMC Networks Inc.*,
   2018 U.S. Dist. LEXIS 242681 (C.D. Cal. July 11, 2018)..................................12

*Tanksley v. Daniels*,
   902 F.3d 165 (3d Cir. 2018) ........................................................................*passim*

*UBI Telecom Inc. v. KDDI Am., Inc.*,
   2014 U.S. Dist. LEXIS 88842 (D.N.J. June 30, 2014)..........................24, 25, 27

*United Ass'n, Local Union No. 322 Pension Fund v. Schmidt*,
   2011 U.S. Dist. LEXIS 18699 (D.N.J. Feb. 24, 2011) ......................3, 21, 22, 26

*Walker v. Kemp*,
   587 F. Supp. 3d 232 (E.D. Pa. 2022)..................................................................13

*Watkins v. ITM Recs.*,
   2015 U.S. Dist. LEXIS 96610 (E.D. Pa. July 24, 2015) ....................................18

*Whitehead v. Paramount Pictures Corp.*,
   53 F. Supp. 2d 38 (D.D.C. 1999)........................................................................13

*Williams v. A&E TV Networks*,
   122 F. Supp. 3d 157 (S.D.N.Y. 2015) ............................................................9, 14

*Williams v. Bobo*,
   2023 U.S. Dist. LEXIS 128798 (S.D. Ohio July 25, 2023)..........................28, 29

*Zella v. E.W. Scripps Co.*,
   529 F. Supp. 2d 1124 (C.D. Cal. 2007)........................................................14, 17

## RULES & STATUTES

Fed. R. Civ. P. 8 ..............................................................................................8, 17

Fed. R. Civ. P. 12 ..............................................................................................6, 7

17 U.S.C. § 102 ..........................................................................................2, 8, 28

17 U.S.C. § 106 ....................................................................................................19

17 U.S.C. § 301 ....................................................................................................27

N.J. Stat. Ann. § 42:1A ..............................................................................3, 21, 22

## **INTRODUCTION**

Following the Court's pre-motion conference on Defendants' anticipated motion to dismiss, Plaintiff Gervase Peterson filed his Amended Complaint asserting two counts: (i) a claim for copyright infringement (Count I) against all Defendants, and (ii) a claim under the New Jersey Uniform Partnership Act (Count II) against Defendants Goldin Auctions, LLC and Ken Goldin only. ECF No. 25. But Plaintiff's second bite at the apple serves only to confirm that this frivolous case never should have been brought in the first place. While two of the original plaintiffs have voluntarily dismissed their claims, Plaintiff has still failed to remedy the pleading defects of the original Complaint. That means the copyright infringement claim fails as a matter of law. And, as detailed below, the new claim under the Uniform Partnership Act fares no better.

This lawsuit stems from Plaintiff's assertion that by merely filing a one-page "treatment" for a show called *The Goldin Boys* with the Copyright Office, he owns the idea for a reality television show about Goldin Auctions' *actual* business and Ken Goldin's *own* life. Plaintiff has recently tried to bolster his claim by registering a second work, this time for a so-called "sizzle reel" for *The Goldin Boys*.[1] But his

---

[1] In their pre-motion letter, Defendants argued that the Complaint should be dismissed because Plaintiff was improperly "asserting a copyright claim based on unregistered works," including the "sizzle reel." ECF No. 15 at 1-2. Plaintiffs disagreed and insisted they could "maintain a suit" for allegedly "copying an unregistered derivative work." ECF No. 16 at 2. But Plaintiff has apparently

entire theory of liability rests on a fundamental misunderstanding of the copyright laws. The Copyright Act protects *original expression*, not *ideas.* 17 U.S.C. § 102(b) ("[i]n no case does copyright protection . . . extend to any idea"); *see also Pino v. Viacom, Inc.*, 2008 U.S. Dist. LEXIS 24453, at *12, *14 (D.N.J. Mar. 4, 2008) (holding that copyright does not extend to "ideas themselves" and that "elements generic to [an] idea" are unprotected). The Act does not allow Plaintiff to use a short treatment or eight-minute video clip to "lock up" a general *idea* for decades and prevent Defendants from participating in a reality show that follows the day-to-day activities of Goldin Auctions and Ken Goldin.

The Amended Complaint also fails at the threshold on account of another fundamental legal defect. Plaintiff improperly lumps all Defendants together throughout the Amended Complaint (*see, e.g.*, Am. Compl. ¶¶ 3-8)—failing to specify, as to any of the five named Defendants, how that Defendant allegedly infringed Plaintiff's claimed copyrights. What's more, Plaintiff makes barely any allegations *at all* as to Defendants Spoke Studios LLC, Wheelhouse Entertainment LLC, and Netflix, Inc., in particular. The Amended Complaint therefore fails for the basic reason that it "does not describe, in sufficient detail *how* [a specific defendant] has committed an act of federal copyright infringement." *Goodman v. Harry Fox*

---

abandoned his position. On August 21—the same day as the pre-motion conference—Plaintiff filed a copyright registration for the "sizzle reel." *See* Am. Compl. ¶ 20 & Ex. B.

*Agency*, 2003 U.S. Dist. LEXIS 27269, at \*26-27 (D.N.J. Dec. 30, 2003) (emphasis added); *see also, e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("After *Iqbal*, it is clear that conclusory or 'bare bones' allegations will no longer survive a motion to dismiss.") (citation omitted).

 The Court should also reject the Amended Complaint's newly added claim against Goldin Auctions and Ken Goldin under the Uniform Partnership Act. Despite the conclusory assertion that Plaintiff, Goldin Auctions, and Ken Goldin "created a partnership" (Am. Compl. ¶ 76), Plaintiff fails to adequately allege that a partnership existed under New Jersey law. He cannot allege, for example, that he received "the profits of [any] business" with Goldin Auctions or Ken Goldin. *Eagan v. Gory*, 374 F. App'x 335, 340 (3d Cir. 2010) (citation omitted). Nor are there plausible allegations that these parties were "obligat[ed] to share losses," which "is one of the most important indicia of a partnership." *Id.* at 339-40. On top of that, the absence of a written partnership agreement alone "favors a finding of no partnership." *United Ass'n, Local Union No. 322 Pension Fund v. Schmidt*, 2011 U.S. Dist. LEXIS 18699, at \*20 (D.N.J. Feb. 24, 2011). These are just a few of the key considerations, but *all* of the so-called "*Fenwick* factors" show that there *was no* partnership and there *is no* viable claim under N.J. Stat. § 42:1A-4.

## BACKGROUND

**A.      Factual Background.**

Goldin Auctions is a Runnemede, New Jersey-based company that operates a leading auction house for consigned collectibles, including sports and pop culture memorabilia and autographed items. Am. Compl. ¶¶ 22-23 & Ex. I at 1. The company's namesake, Founder, and CEO, Ken Goldin, has been in the industry for over 40 years. *Id.*, Ex. E at 4. Athletes and celebrities are among the clients who buy and sell memorabilia through Goldin Auctions. *See id.* ¶¶ 55-56, Exs. D & E.

In April 2023, a reality television show titled *King of Collectibles: The Goldin Touch* ("*King of Collectibles*") became available for streaming on Netflix. *Id.* ¶ 3. The show tracks the day-to-day business operations of Goldin Auctions and takes viewers behind the scenes with Ken Goldin. *Id.*, Ex. I at 1. In June 2023, it was announced that *King of Collectibles* would be returning for a second season. *Id.*

In July 2019, nearly four years before the *King of Collectibles* premiere, Plaintiff Gervase Peterson allegedly registered with the Copyright Office a one-page written "treatment" for a show called *The Goldin Boys*. *Id.* ¶ 19, Exs. A & D. Although the registration identifies the work as a "script/screenplay" (*id.*, Ex. A), the document does not have the details or format of a script or screenplay (*id.*, Ex. D), which is presumably why the Amended Complaint refers to it only as a

4

"treatment." That registered "treatment" provides a "synopsis" describing the general idea for a reality television show:

> The Goldin Boys takes you inside the amazing and sports memorabilia world or Goldin Auctions based in Runnemede, NJ. Watch as Ken and his team acquire and sell sports items dealing with some of the most rare and valuable items in the industry. They're the experts at bringing the highest percentage of "fresh" items that have never been offered to public sale. With some of the highest sale prices and the biggest names past and present in sports along with unforgettable characters The Goldin Boys is a mesmerizing and fascinating television show that will have you addicted and checking your basement and attics for your old collection.

*Id.* Plaintiff's "treatment" also includes a list of potential cast members, including four then-current Goldin Auctions employees—Ken Goldin, Frank DiNote, Steve Lucas, and Rick Berger. *Id.*

After registering the "treatment," Plaintiff and an individual named Skye Dennis allegedly worked with certain Goldin Auctions employees to develop a short video clip—called a "sizzle reel"—for *The Goldin Boys*. Am. Compl. ¶¶ 28, 35-38. The "sizzle reel" was "shot with Defendant [Ken] Goldin and Staff at Defendant Goldin Auctions . . . in early December 2019." *Id.* ¶¶ 37. Shortly after that, Dennis allegedly uploaded the completed "sizzle reel" to Vimeo. *Id.* ¶ 21 & Ex. C. Years later, in August 2023, Plaintiff first registered the "sizzle reel" with the Copyright Office. *Id.* ¶ 20.

**B.    Procedural History.**

On May 25, 2023, Plaintiffs Gervase Peterson, Richard Berger, and Skye Dennis filed this lawsuit—naming Goldin Auctions, Ken Goldin, Spoke Studios LLC, Wheelhouse Entertainment LLC, and Netflix, Inc. as Defendants. The Complaint asserted a single count alleging copyright infringement. Plaintiffs claimed *King of Collectibles* was "strikingly and substantially similar" to Plaintiffs' registered "treatment" for *The Goldin Boys.* Compl. ¶ 5.

On August 4, Defendants filed a joint letter requesting a pre-motion conference regarding their anticipated motion to dismiss under Rule 12(b)(6). ECF No. 15. Defendants made clear that they intended to move to dismiss the Complaint for several reasons, including that: (i) Plaintiffs asserted a copyright claim based on unregistered works and allegedly copied elements that were not present in the registered "treatment" for *The Goldin Boys*; (ii) the copyright laws do not allow Plaintiffs to copyright the idea for a reality show about Goldin Auctions; (iii) the Complaint pressed claims using improper group pleading against all "Defendants" collectively; and (iv) two of the three Plaintiffs (Berger and Dennis) are not listed as claimants on the copyright registration for the "treatment" and thus lacked standing to bring their claims. *See* ECF No. 15.

The Court held a pre-motion conference on Defendants' anticipated motion to dismiss on August 21 and directed Plaintiffs to amend their Complaint by September

5. *See* ECF No. 23.  The Amended Complaint (ECF No. 25) made four relevant changes as compared to the original Complaint. First, in the face of Defendants' arguments that two plaintiffs lacked standing, those plaintiffs were removed from the case, leaving Peterson as the sole remaining Plaintiff. *See generally* Am. Compl. Second, Plaintiff added a new cause of action, against Goldin Auctions and Ken Goldin only, under the Uniform Partnership Act. *See id.*, Count II. Third, Plaintiff made new allegations regarding his ownership of a second copyright, for the so-called "sizzle reel"—which was registered on August 21, the same day as the pre-motion conference. *Id.* ¶ 20. Fourth, Plaintiff added allegations regarding a second season of *King of Collectibles*, namely that Defendants "willfully intend to violate Plaintiff's copyrights" by making a second season—even though Plaintiff acknowledges that Season 2 does not even exist yet, meaning he could not have possibly seen, and does not know the contents of, any planned Season 2 episodes. *Id.* ¶¶ 57-58, 64.

Consistent with the court-ordered schedule (ECF No. 23), Defendants have filed their motion under Rule 12(b)(6), requesting that the case be dismissed with prejudice.

## <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right

to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Allegations that are "no more than conclusions[] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## ARGUMENT

## I.   THE COPYRIGHT CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's copyright claim should be dismissed for two principal reasons. First, Plaintiff fails to identify any allegedly copied element—any *expression*—from his registered works that is protectable under the copyright laws. Second, Plaintiff's improper group pleading fails to allege how any individual Defendant violated Plaintiff's claimed rights. The Amended Complaint therefore falls short of Rule 8's pleading requirements.

### A.   Plaintiff has still failed to identify any protectable element of *The Goldin Boys* that was allegedly copied.

Plaintiff's copyright claim is based on the proposition that he owns the idea for a documentary-style reality television show about Goldin Auctions' business and employees. But it is black-letter law that the copyright laws protect only original expression and do not "extend to any idea." 17 U.S.C. § 102(b); *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003) (explaining that copyright law "distinguishes between ideas and expression and makes only the latter eligible for copyright protection");

*Tanksley v. Daniels,* 902 F.3d 165, 174 (3d Cir. 2018) (explaining that copyright law protects an author's "particular creative expression, not his ideas"). Said otherwise, copyright protection does not cover "ideas themselves," and—as applied to television shows and similar media—"is not available to *scenes a faire*, which are those incidents, characters or settings which are as a practical matter indispensable . . . in the treatment of a given topic." *Pino v. Viacom, Inc.*, 2008 U.S. Dist. LEXIS 24453, at *12 (D.N.J. Feb. 29, 2008).

Courts across the country have repeatedly emphasized this rule in rejecting claims of plaintiffs alleging that their copyright has been infringed by a defendant's reality television show. *See, e.g.*, *Williams v. A&E TV Networks*, 122 F. Supp. 3d 157, 163 (S.D.N.Y. 2015) (granting motion to dismiss and holding "Plaintiff does not own an enforceable copyright in the general idea for a reality show about arranged marriages or marriage between strangers"); *Gray-El v. Jennifer Lopez/Nuyorican Prods.*, 2019 U.S. Dist. LEXIS 230908, at *35 (E.D. Mich. Dec. 18, 2019) (dismissing copyright claim and holding "the shared premise of the two shows—a dance competition show featuring high-level dancers—is unprotectable"); *Castorina v. Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (granting motion to dismiss and rejecting plaintiff's argument "that they own an enforceable copyright in the 'basic concept' of a sports reality show"); *see also, e.g.*, *Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1295-96 (C.D. Cal. 2008)

("Plaintiff simply cannot succeed in this case by claiming a copyright in the idea of a television show based on a weight loss competition."); *Bethea v. Burnett*, 2005 U.S. Dist. LEXIS 46944, at *31-32 (C.D. Cal. June 28, 2005) ("[A]t the level of 'ideas,' there is some similarity between *C.E.O.* and *The Apprentice*," but "[n]o one can own the basic idea for a story."). The issue is even more pronounced in this case, where Plaintiff claims to have copyrighted the idea for a reality show about Goldin Auctions' actual business and Ken Goldin's actual life.

To assess whether a copyright claim may advance past the pleading stage, courts must first "excis[e] all unprotectable ideas and *scènes à faire*," before next "compar[ing] dramatic works across a number of components: plot and sequence of events, dialogue, characters, theme, mood, setting, and pace." *Tanksley*, 902 F.3d at 175 (explaining that "shared premise" or a television show about an "African-American, male record executive" was "within the class of 'prototypes' to which copyright protection has never extended"); *see also Castorina*, 784 F. Supp. 2d at 110 ("When works have both protectable and unprotectable elements, the Court must attempt to extract the unprotectable elements from its consideration and ask whether the protectable elements, standing alone, are substantially similar.") (citation omitted). Here, the Court need not reach the second step of that analysis, which would ask whether Plaintiff's copyrighted works for *The Goldin Boys* and the *King of Collectibles* show are "substantially similar." That's because "[a]fter excising the

10

unprotectable ideas and *scènes à faire*" (*Tanksley*, 902 F.3d at 175), there is simply nothing left for the Court to consider. *See Gray-El*, 2019 U.S. Dist. LEXIS 230908 at *32 (granting motion to dismiss and holding the court "need not get too far into the weeds of comparing the shows" because the alleged elements "to which [Plaintiff] points to show infringement . . . are unprotectable ideas or *scenes a faire*").

Indeed, despite Plaintiff having had two chances to state a viable claim, the Amended Complaint identifies only five (largely overlapping) general "similarities" between *The Goldin Boys* and *King of Collectibles*. *See* Am. Compl. ¶¶ 51-56. But *none* of the allegedly copied elements are protected under the copyright laws. Rather, all the alleged similarities derive from unprotectable elements that cannot support an infringement claim. We address each in turn.

*First*, Plaintiff claims that "[t]he major stars . . . Defendant [Ken] Goldin and [Dave] Amerman, appear prominently in both" *King of Collectibles* and the "sizzle reel" for *The Goldin Boys*. But among the "*scenes a faire*" that copyright does *not* protect are "characters . . . [who] are as a practical matter indispensable . . . in the treatment of a given topic." *Pino*, 2008 U.S. Dist. LEXIS 24453, at *12. Given their employment and leadership roles at Goldin Auctions, it is hard to imagine two individuals more "indispensable" to a reality show about the company's day-to-day operations than its namesake, Founder, and CEO Ken Goldin and his lieutenant Dave

Amerman. *See* Am. Compl. ¶ 54 & Ex. D. No creative thought was needed to identify those two individuals as cast members.[2]

*Second*, Plaintiff points to Dave Amerman's role as "second-in-command foil" and "his storyline [being] featured in both productions." *Id.* ¶¶ 54, 56. But here too, the alleged similarity between the two works hinges on an unprotectable element that is not copyrightable: Amerman is a real person that is actually employed as Ken Goldin's "second-in-command" at Goldin Auctions. As discussed above, Amerman's involvement would, as a practical matter, be necessary for any reality show about Goldin Auctions. Moreover, "a creator cannot copyright the idea of casting a real person on a show." *Sawicky v. AMC Networks Inc.*, 2018 U.S. Dist. LEXIS 242681, at *5 (C.D. Cal. July 11, 2018); *see also, e.g.*, *Bethea*, 2005 U.S. Dist. LEXIS 46944, at *40 ("Plaintiffs cannot copyright the idea of having a well-known business leader, or even more specifically Donald Trump, host a reality television program."). And it makes sense that "characters" on a reality show are not protectable: "Character is developed entirely through the dynamic interaction of the

---

[2] Plaintiff's new allegations regarding a potential second season of *King of Collectibles* are frivolous. *See* Am. Compl. ¶¶ 57-58, 64. The Amended Complaint acknowledges that Season 2 has yet to be created (*id.*), meaning Plaintiff has no knowledge of the contents of any planned episodes, let alone whether they include any protected expression found in Plaintiff's claimed works. The allegations about a second season thus demonstrate vividly that Plaintiff's claim is overbroad and based on the misguided notion that he owns *the idea* of any show about Goldin Auctions, regardless of its contents.

contestants over the course of the program." *Milano v. NBC Universal, Inc.*, 584 F. Supp. 2d 1288, 1297 (C.D. Cal. 2008). Regardless, "[a] Lieutenant or 'righthand-man' character is a generic prototype" that is "not entitled to copyright protection." *Walker v. Kemp*, 587 F. Supp. 3d 232, 244 (E.D. Pa. 2022); *see also Whitehead v. Paramount Pictures Corp.*, 53 F. Supp. 2d 38, 50 (D.D.C. 1999) ("General characteristics such as black hair, intelligence, patriotism and slight paranoia, however, are not copyrightable and do not establish substantial similarity.").

*Third*, Plaintiff asserts that "both productions highlight segments featuring celebrity athletes discussing their stories about collectibles." Am. Compl. ¶ 56. But these are "elements generic to the idea of a . . . reality television show" (*Pino*, 2008 U.S. Dist. LEXIS 24453, at *14) about "a leading auction house specializing in rare collectibles"—nothing more. Am. Compl., Ex. I at 1. Of course, Plaintiff did not come up with the idea for a show featuring interviews with athletes. *See Grey-El*, 2019 U.S. Dist. LEXIS 230908, at *35 (holding that "judges, rounds of competition and elimination, a host or hosts, and a prize or prizes for the winner" are unprotectable generic elements of a reality show). These are "stock elements typical of the reality show genre and *scenes a faire* flowing from a sports-themed show" (or any show involving sports memorabilia and autographed items), and are therefore unprotected. *Pino*, 2008 U.S. Dist. LEXIS 24453, at *13; *see also Rodriguez v. Heidi Klum Co.*, 2008 U.S. Dist. LEXIS 80805, at *18 (S.D.N.Y. Sept. 30, 2008) ("The

use of a panel of judges composed of fashion industry experts, a design workroom with sewing machines, a specific number of contestants, professional models, hairstylists, make-up artists, weekly episodes and the setting of New York (among other enumerated similarities) all necessarily flow from the uncopyrightable idea of a fashion design reality show."). Plaintiff certainly does not own an enforceable copyright in the use of celebrity interview segments in a reality show. *See Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1135 (C.D. Cal. 2007) ("The alleged specific similarities of two shows with cooking, interviewing celebrities, and discussing celebrity projects are *scenes a faire* not protected by copyright law."); *Williams*, 122 F. Supp. 3d at 163 (holding that "appearances by and interviews of family members and friends of contestants . . . stem from the unprotectable concept of a reality show about arranged marriages").

*Fourth*, according to Plaintiff, "Jackie Robinson's valuable memorabilia is featured in the original *Goldin Boys* pitch and plays a prominent role in the first episode of *King*." Am. Compl. ¶ 56. But this is likewise an unprotectable "stock element" of a reality show featuring collectible, high-value sports memorabilia. *Pino*, 2008 U.S. Dist. LEXIS 24453, at *13. Historical facts about Jackie Robinson and his baseball items are prototypical elements that cannot be protected. *Hayes v. Minaj*, 2012 U.S. Dist. LEXIS 197043, at *14 (C.D. Cal. Dec. 18, 2012) ("pure ideas, familiar literary scenes and themes, historical facts, and situations and incidents that

14

flow necessarily or naturally from a basic plot premise ('scenes-a-faire'), are unprotectable features of literary work") (citing *Benay v. Warner Bros. Ent., Inc.*, 607 F.3d 620, 624 (9th Cir. 2010)). While the allegations refer only to Jackie Robinson memorabilia being featured on *King of Collectibles*, Plaintiff likewise could not meaningfully allege copyright infringement based on the show's inclusion of any specific historically significant athlete or piece of memorabilia or any sale that took place at Goldin Auctions. *See Jackson v. Booker*, 465 F. App'x 163, 168 (3d Cir. 2012) ("The show consists entirely of true, historical events which took place 17 years after Jackson obtained his copyright in his work of fiction. The cameras follow Mayor Booker to his appearances at public events, film him in interviews and in closed-door meetings, and film his interactions with his constituents.").

But Plaintiff's reliance on this "similarity" fails for an even more fundamental reason: Jackie Robinson is *never mentioned or shown* in the copyrighted "treatment" or "sizzle reel" for *The Goldin Boys*. *Compare* Am. Compl. ¶ 56 *with* Exs. C & D. Only the *unregistered* "enhanced description of the treatment" references Jackie Robinson, and even then, those references are limited to two photographs and a factual description of Ken Goldin's experience auctioning "original copies of Jackie Robinson's contracts." *Id*., Ex. E at 1-2. Any alleged similarities between an unregistered "enhanced treatment" and *King of Collectibles* cannot form the basis of

a copyright infringement claim. *Gregory S. Markantone DPM, P.C. v. Podiatric Billing Specialists, LLC*, 599 F. App'x 459, 460 (3d Cir. 2015) ("an action for infringement of a copyright may not be brought until the copyright is registered")

*Finally*, Plaintiff claims that "*King* [*of Collectibles*] shares the same pacing, look, feel and editing of *The Goldin Boys.*" *See* Am. Compl. ¶ 53. But that is not enough to identify a protectable element or expression. Nor is it enough to state an infringement claim. It is well-settled that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Amended Complaint includes *no* factual allegations or details that would shed light on why the "pacing, look, feel, and editing" of *The Goldin Boys* "sizzle reel" are in any way unique or should be protectable, or how those elements of Plaintiff's "sizzle reel" are allegedly similar to aspects of *King of Collectibles*.[3] *Tanksley*, 902 F.3d at 175. Plaintiff cannot simply parrot back some of the elements that courts consider when evaluating similarities between two works. *Pino*, 2008 U.S. Dist. LEXIS 24453, at *11 (describing elements of extrinsic test). Were it otherwise, copyright plaintiffs would be able to survive a pleading-stage challenge and reach discovery merely by

---

[3] Plaintiff's skeletal "treatment," of course, contains no "pacing, look, feel [or] editing."

reciting the same vague label about similar "pacing, look, feel, and editing." That is

not—and cannot be—the law. [4]

Plaintiff has failed to identify a single protectable element or any protected

expression from *The Goldin Boys* that was allegedly copied. Accordingly, the Court

should dismiss his copyright claim.

### B.   Plaintiff's allegations improperly lump all "Defendants" together.

Even if Plaintiff could otherwise adequately allege copyright infringement

(and he cannot), Count I would still fail because the Amended Complaint relies on

improper "group pleading."  Like the original Complaint, the Amended Complaint

lumps all "Defendants" together and fails to specify *which* Defendant engaged in

*what* conduct. *See, e.g.*, Am. Compl. ¶¶ 3-8, 63-68.

At a minimum, Rule 8 requires that "the Amended Complaint . . . provide

Defendants with fair notice of what the claims are as to *each* defendant and on what

factual grounds they rest." *Marchisotto v. Malik*, 2022 U.S. Dist. LEXIS 114921, at

\*19 (D.N.J. June 29, 2022). When multiple defendants are "lumped" together in

allegations, it "undermines the notice pleading regime of Rule 8." *Bond v. Solvay*

---

[4] Even if Plaintiff had alleged facts plausibly supporting his bare conclusion, his claim would still fail because "there are only a finite number of ways in which to express the idea of a . . . show" about an auction house. *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1135 (C.D. Cal. 2007). "Extending copyright protection over the generic format of a[n] [auction] show would stretch the bounds of copyright law beyond what it was intended to cover." *Id.*

*Specialty Polymers, USA, LLC*, 2023 U.S. Dist. LEXIS 32426, at *15 (D.N.J. Feb. 27, 2023). Multiple courts within this Circuit have applied this rule to dismiss copyright claims specifically. *See, e.g.*, *Levey v. Brownstone Inv. Grp., LLC*, 2013 U.S. Dist. LEXIS 90178, at *17 (D.N.J. June 26, 2013) (granting motion to dismiss because plaintiff did not demonstrate "by what specific acts and during what time Defendants infringed" copyright), *aff'd*, 590 F. App'x 132 (3d Cir. 2014); *see also, e.g.*, *Watkins v. ITM Recs.*, 2015 U.S. Dist. LEXIS 96610, at *8 (E.D. Pa. July 24, 2015) (dismissing copyright complaint that "aims at many defendants, but entirely misses its mark due to its lack of specifics").

The Amended Complaint fails entirely to differentiate among the five named Defendants. Plaintiff does not specify *what* each Defendant allegedly did or *how* that Defendant allegedly infringed Plaintiff's claimed copyrights. By way of illustration, Plaintiff alleges that *all* "Defendants directed, produced, advertised, sold, and streamed *King of Collectibles*" (Am. Compl. ¶ 3) and *all* "Defendants, without permission . . . from Plaintiff, have copied, sold, distributed, advertised and streamed" that show. *Id.* ¶ 63. But it should be obvious that Plaintiff does not mean to allege that *all five* Defendants engaged in *every one* of those alleged acts. As just one example, Ken Goldin may have appeared on camera as one of the "stars" on *King of Collectibles* (*id.* ¶ 54), but there are no factual allegations suggesting that he directed *King of Collectibles*, produced the show, or engaged in any alleged specific

act of infringement. Because Defendants cannot possibly "know what they are alleged to have done, they are shadow-boxing," and this "action cannot proceed in that manner." *Plusgrade L.P. v. Endava Inc.*, 2023 U.S. Dist. LEXIS 39114, at *14 (S.D.N.Y. Mar. 8, 2023).

Furthermore, just like the original Complaint, the Amended Complaint makes exceedingly few allegations against Spoke Studios, Wheelhouse Entertainment, and Netflix, in particular. These parties are barely even mentioned in the Amended Complaint outside of the case caption and the "parties and jurisdiction" section. *See* Am. Compl. ¶¶ 12-14; *see, e.g.*, *Goodman v. Harry Fox Agency*, 2003 U.S. Dist. LEXIS 27269, at *26-27 (D.N.J. Dec. 30, 2003) (granting motion to dismiss as to a defendant that was not referenced in the complaint outside of the caption and holding that "general allegations" about the defendants together as a group were insufficient). Indeed, the Amended Complaint includes a *single* allegation—made on information and belief—that Goldin Auctions and Ken Goldin shopped the "sizzle reel" to Spoke, Wheelhouse, and Netflix. *See* Am. Compl. ¶ 49. Even if true, this allegation would not support a claim of copyright infringement. If these Defendants did see the "sizzle reel," that viewing could not be an act of infringement by those Defendants and does not implicate or suggest infringement by them of any of the exclusive rights of a copyright owner under the Copyright Act. *See* 17 U.S.C. § 106 (exclusive rights of copyright owner are rights to reproduce, prepare derivative

works based on, distribute, perform and display the copyrighted work). Furthermore, the new allegations against these Defendants relating to a potential second season (*see, e.g.*, Am. Compl. ¶¶ 57, 58, 60, 64) are not actionable for a straightforward reason: As Plaintiff alleges, Season 2 does not even exist yet and therefore could not be infringing any work copyrighted by Plaintiff.  *See supra* at 12 n.2; Am. Compl. ¶ 60 ("Defendants *intend to proceed with* production of Season 2") (emphasis added).

Because Plaintiff has not alleged "by what specific acts and during what time Defendants infringed" his registered works, the copyright claim should be dismissed. *Levey*, 2013 U.S. Dist. LEXIS 90178, at *17.

## II.   PLAINTIFF'S CLAIM UNDER THE NEW JERSEY UNIFORM PARTNERSHIP ACT ALSO FAILS AS A MATTER OF LAW.

Apparently recognizing the shortcomings of his copyright claim, Plaintiff has added a so-called "[a]ncillary claim" in the Amended Complaint against Goldin Auctions and Ken Goldin for allegedly violating the New Jersey Uniform Partnership Act. *See* Am. Compl. ¶¶ 75-82. According to the Amended Complaint, Plaintiff, Goldin Auctions, and Ken Goldin "created a partnership when the[y] decided to make a reality show together" and Goldin Auctions and Ken Goldin breached their duty of loyalty by "repackag[ing] *The Goldin Boys* as *King* [*of Collectibles*]," making them "liable to Plaintiff for his share of profits." *Id.* ¶¶ 76, 81-82. But Plaintiff has failed to state a claim. With no partnership agreement to point to, Plaintiff fails to plausibly allege that a legal partnership existed under New

Jersey law. And even if Plaintiff could allege the type of facts that would be necessary, his partnership claim would be preempted by the Copyright Act.

### A.   Plaintiff cannot plausibly allege the existence of a partnership under New Jersey law.

The Uniform Partnership Act "governs the formation of partnerships in New Jersey" (*Messler v. Cotz*, 2017 U.S. Dist. LEXIS 61817, at *5 (D.N.J. Apr. 24, 2017), *aff'd*, 784 F. App'x 70 (3d Cir. 2019)), and defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." N.J. Stat. Ann. § 42:1A-2. Consistent with that definition, the Act provides that, subject to certain exceptions, "[a] person who receives a share of the profits of a business is presumed to be a partner in the business." N.J. Stat. Ann. § 42:1A-10(c)(3). This presumption is rebuttable (*Eagan v. Gory*, 374 F. App'x 335, 340 (3d Cir. 2010)), and "courts also consider the following seven factors" to "determine[e] whether a partnership exists":

> (1) the parties' intention to form a partnership; (2) obligation to share in profits and losses; (3) ownership and control of the partnership's property and business; (4) community of power and administration; (5) language used in the partnership agreement; (6) conduct of the parties toward third persons; and (7) rights of the parties upon dissolution.

*Messler*, 2017 U.S. Dist. LEXIS 61817, at *5-6. These are known as "the *Fenwick* factors." *See United Ass'n, Local Union No. 322 Pension Fund v. Schmidt*, 2011 U.S. Dist. LEXIS 18699, at *15-16 (D.N.J. Feb. 24, 2011) (citing *Fenwick v.*

*Unemployment Comp. Comm'n*, 44 A.2d 172, 175 (N.J. 1945)). "An alleged agreement that fails to meet a number of those factors does not constitute a partnership agreement." *Id.* at *16.

Here, Plaintiff fails to plausibly allege facts sufficient to show the existence of a partnership. *Messler*, 2017 U.S. Dist. LEXIS 61817, at *6 ("[T]he burden of establishing a partnership falls on the party alleging that it exists."). For starters, the presumption that a person sharing profits is a partner does not apply in this case. *See* N.J. Stat. Ann. § 42:1A-10(c)(3). That is because Plaintiff does not (and cannot) allege that the parties agreed that he would share any profits—much less that he *in fact* shared in profits—with Goldin Auctions and Ken Goldin. At best, the Amended Complaint alleges only that "[Ken] Goldin and Goldin Auction[s] are liable to Plaintiff for his share of profits." Am. Compl. ¶ 82. But Plaintiff alleges no factual support to back that up, and his bare legal conclusion that he should receive a share of the profits is "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680.

In any event, even assuming the presumption applies (and it does not), it is "rebutted" where—as here—the *Fenwick* factors "weigh[] against" finding that a partnership existed. *Eagan*, 374 F. App'x at 340. As detailed below, each of the factors and Plaintiff's own allegations confirm that there was no partnership here.

"***The parties' intention to form a partnership***." As it relates to the first *Fenwick* factor, Plaintiff alleges that "[g]iven all of the collective interactions and

intention evidenced by the parties in putting together and marketing the 'sizzle reel,' it is clear from Defendants [Ken] Goldin and Goldin Auction's conduct that they intended to be partners with Plaintiff in a joint venture." Am. Compl. ¶ 77. But Plaintiff's allegations fail to explain how working together to collaborate on a *single* "sizzle reel"—which is around eight minutes long and has gotten fewer than 500 views (*see* Am. Compl., Ex. C)—somehow means that these parties intended to enter into a *legal partnership* going forward and *split any profits* for any reality show that might be made about Goldin Auctions' business and employees. There are no factual allegations that could fill the gap left by Plaintiff's logical leap.

**"*Obligation to share in profits and losses*."** The second *Fenwick* factor— which is one of the most important—also supports a finding that there was no partnership. In particular, setting aside labels and conclusions, Plaintiff fails to allege that Goldin Auctions and Ken Goldin had an obligation to share any profits with Plaintiff. *See* Am. Compl. ¶¶ 75-82. Presumably Plaintiff has not alleged that because there was no such obligation. Nor are there any allegations about a history or course of performance in which these parties actually split profits over the years. *See id.* The same is true for losses: Plaintiff has not alleged that these parties had an obligation to share, or in fact did share, in losses.

To be sure, the Amended Complaint does claim that Plaintiff, "through his business partner, Skye Dennis, shared the costs of making the 'sizzle reel' with

Defendants Goldin and Goldin Auctions." *Id.* ¶ 78. But even accepted as true, that allegation falls short of plausibly suggesting that these parties were obligated to share in their losses for two reasons: First, allegedly sharing in *costs* for a single project (the "sizzle reel") does not show that these parties had an obligation to share in *losses* generally and on a going-forward basis. Indeed, courts have consistently held that providing financial "support" or "contributions," as Plaintiff alleges, is not the same thing as sharing in "losses." *See UBI Telecom Inc. v. KDDI Am., Inc.*, 2014 U.S. Dist. LEXIS 88842, at *40 (D.N.J. June 30, 2014) ("financial support" was "not . . . an agreement to share losses indefinitely"); *Aequus Techs., LLC v. gh, LLC*, 2009 U.S. Dist. LEXIS 72933, at *13 (D.N.J. Aug. 17, 2009) ("contributions are not in and of themselves evidence that losses would be equally shared").

Second, the Amended Complaint confirms that Plaintiff is unable to allege that he personally shared costs with Goldin Auctions and Ken Goldin in any event. Instead, Plaintiff alleges that third-party and former plaintiff "[Skye] Dennis, shared the costs" in making the "sizzle reel" for *The Goldin Boys.* Am. Compl. ¶ 78. Based on these allegations, the Amended Complaint fails to allege that Plaintiff shared in any losses in the purported partnership, which "is one of the most important indicia of a partnership." *Eagan*, 374 F. App'x at 339; *see also Messler*, 2017 U.S. Dist. LEXIS 61817, at *6 ("The Third Circuit has attributed a significant amount of weight to whether losses are shared, in conducting a partnership analysis.").

"***Ownership and control of the partnership's property and business***." None of the allegations in the Amended Complaint speak to the third *Fenwick* factor, which counsels in favor of finding no partnership. At the same time, the copyright registrations attached as exhibits to the Amended Complaint give further confirmation that the "ownership and control" of partnership property factor cuts against Plaintiff's position. When registering both the "treatment" and the "sizzle reel" with the Copyright Office, Plaintiff designated and listed himself as the sole "claimant." Neither Goldin Auctions nor Ken Goldin were included as "claimants." *See* Am. Compl., Exs. A & B. In short, despite alleging a partnership with Goldin Auctions and Ken Goldin, Plaintiff claims to exercise sole ownership and control over copyright registrations and underlying intellectual property that would presumably belong to the same purported partnership.

"***Community of power and administration***."  Plaintiff also fails to allege any facts bearing on the fourth *Fenwick* factor, which further supports dismissing Plaintiff's partnership claim at the pleading stage.  *See UBI Telecom*, 2014 U.S. Dist. LEXIS 88842, at *38, *56 (dismissing claim under the Uniform Partnership Act because, among other reasons, plaintiff had "not sufficiently alleged the existence of mutual control or management, or power and administration").

"***Language used in the partnership agreement***." Next, "because the Complaint fails to allege that [the parties] entered into a partnership agreement, the

fifth *Fenwick* factor favors a finding of no partnership." *United Ass'n*, 2011 U.S. Dist. LEXIS 18699, at \*20; *see also Aequus Techs.*, 2009 U.S. Dist. LEXIS 72933, at \*14 ("The lack of language defining the relationship between parties favors a finding of no partnership agreement."). Plaintiff does not (and cannot) allege that there was a written partnership agreement between Plaintiff, Goldin Auctions, and Ken Goldin. The absence of such an agreement weighs against the Court imposing a legal partnership on the parties.

"***Conduct of the parties toward third persons***." Plaintiff does not address this sixth *Fenwick* factor. Nowhere does the Amended Complaint allege that the parties held themselves out to third parties as "partners." The same is true when it comes to the Amended Complaint's exhibits: there is nothing to show that when Plaintiff Goldin Auctions, and Ken Goldin contacted third parties about the "sizzle reel" or *The Goldin Boys*, they referred to one another as "partners." That "the parties never referred to a partnership in their dealings with third parties" is yet another factor that supports finding that there was no partnership. *Eagan*, 374 F. App'x at 340-41.

"***Rights of the parties upon dissolution***." "There are no allegations in the [Amended] Complaint that define the scope of the rights and obligations of the parties upon dissolution," so "the seventh *Fenwick* factor favors no partnership." *United Ass'n*, 2011 U.S. Dist. LEXIS 18699, at \*21. Plaintiff has not alleged that there are any rights upon dissolution because there is nothing to dissolve.

26

Because Plaintiff failed to plausibly allege the existence of a partnership under the *Fenwick* factors, the Amended Complaint fails to state a claim under the Uniform Partnership Act. *See UBI Telecom*, 2014 U.S. Dist. LEXIS 88842, at *31-33, *56 (dismissing claim "alleging a breach of fiduciary duty premised on the existence of a partnership[] under New Jersey law" because the plaintiff had "not sufficiently pleaded the existence of a . . . partnership").

**B.    In any event, the Copyright Act preempts the New Jersey partnership claim.**

Even if Plaintiff had alleged facts sufficient to plausibly suggest the existence of a partnership, the New Jersey partnership claim would still be subject to dismissal because it is preempted by the federal Copyright Act.

The Copyright Act includes an express preemption provision. 17 U.S.C. § 301. Under that section, "a state law claim may be preempted if it creates rights 'equivalent' to the exclusive rights within the scope of copyright." *Marino v. Usher*, 673 F. App'x 125, 129 (3d Cir. 2016). "[S]tate law is expressly preempted where the elements of the claim at issue are the same as those required for an infringement claim[.]" *Id.* As such, there are two requirements for establishing federal preemption: (i) "the work is the appropriate subject matter of a copyright," and (ii) "state law creates rights equivalent to the exclusive rights protected by the Copyright Act." *Id.* at 129 n.16. Applying this same framework, courts have held that various state-law claims are preempted by the Copyright Act. *See, e.g.*, *id.* at 129 (holding that

27

constructive trust claim was preempted by Copyright Act); *Tanksley v. Daniels*, 902 F.3d 165, 177 (3d Cir. 2018) ("[Plaintiff's] negligence claims, being virtually indistinguishable from the infringement claims, are preempted by the Copyright Act."); *Envoy Techs., Inc. v. Northrop Grumman Co.*, 2020 U.S. Dist. LEXIS 75923, at *21-28 (D.N.J. Apr. 30, 2020) (granting motion to dismiss claims for fraud, misappropriation, and unjust enrichment as preempted by the Copyright Act); *78th Infantry Div., World War II Living History Ass'n v. Oprendek*, 2011 U.S. Dist. LEXIS 140014, at *13 (D.N.J. Aug. 4, 2011) ("[T]he Court finds that the Copyright Act preempts the Association's conversion and trespass to chattels claims.").

In fact, another district court recently granted a motion to dismiss state-law claims asserting the existence of a partnership and breach of the partner's fiduciary duty on the grounds that they were preempted by the Copyright Act. *See Williams v. Bobo*, 2023 U.S. Dist. LEXIS 128798 (S.D. Ohio July 25, 2023). The same is true here. As to the first preemption element, Plaintiff's partnership claim is based on the alleged use of a written "treatment" and "sizzle reel" for a television show, which are "original works of authorship" that are copyrightable. 17 U.S.C. § 102 (listing categories of works of authorship that are protected by copyright laws); *Williams*, 2023 U.S. Dist. LEXIS 128798, at *11-12 (finding that "partnership claims [met] the [first preemption element] because each is based on alleged wrongful conduct related to or use of the Products . . . , at least some aspects of which are eligible for

copyright protection"). And the second element is met because, through the partnership claim, Plaintiff seeks compensation for the alleged infringement and therefore seeks to protect rights already protected by the Copyright Act. *Id.* at *12-13 ("each of the Partnership Claims 'depend on Defendants' alleged use of Plaintiffs original work without permission or compensation'") (citation omitted). That is why Plaintiff includes no new factual allegations to support his partnership claim. Instead, this "alternative" and "[a]ncillary" claim piggybacks on the same facts supporting his copyright claim.

In sum, "[b]ecause both . . . tests are met, [Plaintiff's] Partnership claim[] [is] preempted." *Williams*, 2023 U.S. Dist. LEXIS 128798, at *13.

## CONCLUSION

The Court should grant Defendants' motion and dismiss the Amended Complaint in its entirety with prejudice. *See, e.g.*, *E. Coast Spine Joint v. Aetna Life Ins. Co.*, 2023 U.S. Dist. LEXIS 129231, at *6-8 (D.N.J. July 25, 2023) (amended complaint's failure to "cure the defects in the original complaint" warranted dismissal with prejudice); *Maldonado v. City of Passaic Bd. of Educ.*, 2020 U.S. Dist. LEXIS 9586, at *24-25 (D.N.J. Jan. 21, 2020) (dismissing amended complaint with prejudice because plaintiffs failed to correct "the obvious deficiencies in the original complaint").

Dated:  September 26, 2023

/s/ Craig Carpenito
Craig Carpenito (New Jersey Bar
No. 027102000)
**KING & SPALDING LLP**
1185 Avenue of the Americas
34th Floor
New York, New York 10036
ccarpenito@kslaw.com
Telephone: (212) 556-2142
Facsimile: (212) 556-2222

*Counsel for Defendants*
*Spoke Studios LLC, Wheelhouse*
*Entertainment LLC, and Netflix, Inc.*

Respectfully submitted,

/s/ Jenny Kramer
Jenny Kramer (New Jersey Bar
No. 014372001)
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, New York 10016
jenny.kramer@alston.com
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

Jonathan D. Parente (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
jonathan.parente@alston.com
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel for Defendants*
*Goldin Auctions, LLC and Ken Goldin*